## Hopewell Township School District

*Myron E. Rowley,* for petitioner.

McCREARY, P. J., March 24, 1947.—The Board of School Directors of the School District of Hopewell Township, Beaver County, Pa., filed a petition, at the request of the professional employes of said district, asking this court for a declaratory decree on the following questions:

1. Is the present high cost of living an emergency within the meaning of section 563 of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §610?

2. May the Board of School Directors of Hopewell Township, Beaver County, Pa., grant to professional employes of said school district an increase in salary on account of the current high cost of living, which increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded?

Upon presentation of the petition the court fixed February 14, 1947, at 9 a.m. as the time and open court as the place for a hearing thereon, at which time and place the testimony of all parties who chose to be heard

was taken, including members of the board of school directors and several professional employes. From the whole record, including the testimony and the uncontroverted allegations of the petition joined in by both the board and the professional employes, we find the facts to be as follows:

## Findings of Fact

1. In the month of May 1946 the Board of School Directors of the School District of Hopewell Township, a school district of the fourth class in Pennsylvania, adopted a budget for the school year 1946-1947, providing for total expenditures of $154,779.41.

2. Prior to the formulation of said budget, the professional employes of the School District of Hopewell Township respectfully requested the Board of Directors of the School District of Hopewell Township for "substantial" increases in salaries of its professional employes for the fiscal year of 1946-1947.

3. In view of the financial distress of the School District of Hopewell Township, provisions for increases in the budget for the fiscal year 1946-1947, other than the regular increments for each teacher as required by the School Code, were denied.

4. On October 22nd at the regular board meeting, the president of the board appointed a committee of three board members to confer with a committee of three teachers of the professional employes to discuss the matter of salary increases.

5. On December 19, 1946, the professional employes of the school district presented a request to the board for a so-called cost of living increase in salary in the amount of $200 per employe for the current fiscal year.

6. The said increase cannot be granted without exceeding the total appropriation of $154,779.41, as provided for in the budget.

7. The budget as adopted, providing for expenditures for the fiscal year 1946-1947, made provision for

the various departments as follows:

| | |
|---|---|
| A. General control | $3,230.00 |
| B. Instructional service | 90,389.41 |
| C. Auxiliary agencies and coördinate activities | 13,120.00 |
| D. Operation of plant | 10,475.00 |
| E. Maintenance of plant | 1,175.00 |
| F. Fixed charges | 3,635.00 |
| G. Debt service | 29,255.00 |
| H. Capital outlay | 3,500.00 |
| Total proposed expenditures | $154,779.41 |

8. Estimated receipts to balance these proposed expenditures, as anticipated by the board, were set forth in the budget as adopted as follows:

| | |
|---|---|
| Property tax 1946 | $50,500.00 |
| Per capita tax 1946 | 9,500.00 |
| Delinquent tax (previous to 1946) | 3,500.00 |
| State appropriation | 77,729.41 |
| Tuition nonresident pupils | 3,250.00 |
| Temporary loans | 8,600.00 |
| All other sources | 1,700.00 |
| Total receipts | $154,779.41 |

9. As of the date of hearing the total of receipts to February 1, 1947, added to the receipts estimated to be forthcoming to the end of the fiscal year, is as follows:

| | |
|---|---|
| Taxes—Property | $50,426.65 |
| Per capita | 9,194.40 |
| Delinquent | 6,846.34 |
| State Appropriation | |
| Regular teachers | 69,587.44 |
| Transportation | 7,584.29 |
| High school tuition | 121.60 |
| Special aid | 5,000.00 |

| | |
|---|---|
| Tuition ........................ | 5,647.40 |
| Other receipts ................... | 3,625.29 |
| Total ......................... | $158,033.41 |

10. As of the date of hearing the total expenditures to February 1, 1947, added to anticipated necessary expenditures to the end of the fiscal year 1946-1947, are as follows:

| | |
|---|---|
| General control ................... | $3,558.75 |
| Instruction ...................... | 94,294.13 |
| Auxiliary agencies ............... | 14,164.76 |
| Operation ....................... | 10,905.17 |
| Maintenance .................... | 3,606.88 |
| Fixed charges ................... | 3,065.15 |
| Debt service .................... | 27,263.33 |
| Capital outlay .................. | 1,847.09 |
| Total expenditures ............. | $158,705.26 |

11. If all moneys are collected, as estimated to be available, to the end of the fiscal year 1946-1947, as shown in finding of fact No. 9, and expenditures are made by the board as anticipated in finding of fact No. 10, the school district will have a deficit of $671.85.

12. If all expenditures are made by the board as contemplated by their estimates of necessary expenditures, as shown by finding of fact No. 10, the board will have exceeded its budget by $3,025.85.

13. If all expenditures are made by the board as contemplated by their estimates of necessary expenditures, as shown by finding of fact No. 10, the board will have exceeded its budget in the following departments in the following amounts:

| | Budget Estimate | Anticipated Expenditures | Deficit |
|---|---|---|---|
| General control | $ 3,230.00 | $ 3,558.75 | $ 328.75 |
| Instruction | 90,389.41 | 94,294.13 | 3,904.72 |

| | | | |
|---|---|---|---|
| Auxiliary agency | 13,120.00 | 14,164.76 | 1,044.76 |
| Operation of plant | 10,475.00 | 10,905.17 | 430.17 |
| Maintenance | 1,175.00 | 3,606.88 | 2,431.88 |

Total deficit ...................... $8,140.28

14. The only three departments in which an anticipated surplus appears are as follows:

| | Budget Estimate | Anticipated Expenditures | Surplus |
|---|---|---|---|
| Fixed charges | $3,635.00 | $3,065.15 | $569.85 |
| Debt service | 29,255.00 | 27,263.33 | 1,991.67 |
| Capital outlay | 3,500.00 | 1,847.09 | 1,652.91 |

Total surplus ..................... $4,214.43

15. By reference to findings of fact Nos. 13 and 14, it is apparent that at the end of the present fiscal year 1946-1947 the budget adopted by the board will have been exceeded by $3,025.85 without granting any emergency increase to the professional employes, and this without even considering the possibility of the board of directors making additional appropriations or increasing existing appropriations under the provisions of section 563 of the School Code of May 18, 1911, P. L. 309, sec. 563, 24 PS §610, as amended, which reads as follows:

"The board of school directors may, during any fiscal year, make additional appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophies, the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans."

16. To grant the increase demanded by the professional employes, namely an increase of $200 for each professional employe for the current fiscal year, would

require an expenditure of an additional sum of $9,200, which would result in expenditures in excess of the budget as adopted in the amount of $13,125.85.

17. There is no unappropriated balance in the instruction account which is available for any increase.

18. There are no anticipated unexpended balances in any of the accounts of the board other than as shown in finding of fact No. 14, above, available for transfer to the instruction account, and no part of this anticipated surplus could be transferred to the instruction account and applied to paying an increase in teachers' salaries without throwing the budget further out of balance.

19. The school tax millage for the School District of Hopewell is at present 35 mills on the dollar, the limit allowed by the School Code, as amended by the Act of May 23, 1923, P. L. 328.

20. There are no uncollected current revenues, State appropriation balances or property taxes filed for previous years on a basis of which temporary loans might be made for financing any increase as requested by the professional employes of Hopewell Township School District, under the provisions of the School Code (24 PS §§441, 441.1), it appearing from the testimony that all such items are now included in the revenue anticipated as collectible and applicable to items of expenditure already calculated in the budget.

21. The petition for declaratory judgment was executed by all of the members of the Board of Directors of the School District of the Township of Hopewell and was joined in by all of the professional employes, but no taxpayer, as such, representing himself and the other taxpayers of the district joined in the petition, nor was any such person served with notice of the time and place of hearing, nor was any appearance entered or answer filed by any such person.

22. It is conceded by petitioners that the increase demanded by the professional employes cannot be granted without exceeding the total appropriation of $154,779.41, as provided for in the budget.

23. It is conceded by the petitioners that the matter was presented to the school board solicitor, Myron E. Rowley, and that he advised the board that under the provisions of the School Code the increase demanded could not be granted by the board because, he advises: (1) It would cause the budget to be exceeded, and (2) there is no emergency as required by the Act of May 18, 1911, P. L. 309, sec. 563, 24 PS §610. This section authorizes the school directors, during any fiscal year, to make additional appropriations or increase existing appropriations to meet *emergencies, such as epidemics, floods, fire, or other catastrophies,* provided the board can find the money in anticipated unexpended balances in existing appropriations, or in unappropriated revenue, if any, or in borrowings on temporary loans.

24. The change in the cost of living between May 27, 1926, and February 10, 1947, as shown by the Fisher indices, was as follows:

| | 5/27/46 | 6/24/46 | 1/6/47 | 2/10/47 |
|---|---|---|---|---|
| Fisher's Commodity Price Index, 1926—100 | 119.4 | 121.4 | 151.8 | 150.9 |
| Fisher's Purchasing Power of Dollar, 1926—100 | 83.7 | 82.4 | 65.9 | 66.3 |

25. The professional employes of Hopewell Township School District have contracts calling for an average annual payment of $1,925 each to high school teachers, and an average payment of $1,735 each to elementary teachers, $1,600 being paid to the lowest paid teacher and $2,350 to the highest paid teacher, the actual school term covering a period of approximately nine months.

26. Several of the professional employes introduced statements at the hearing showing actual budgeted expenditures required for bare necessities in their respective households, which reveal a situation requiring

attention of the proper authorities to the necessity of increase in annual salaries for all the professional employes to meet the current living costs of such employes.

From these findings of fact we draw the following

### Conclusions of law

1. The board of school directors of the Township of Hopewell may not grant to the professional employes of said school district an increase of salary for the current fiscal year on account of the current high cost of living, since such increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded, contrary to the provisions of article V, sec. 563 of the Act of May 18, 1911, P. L. 309, as last amended by the Act of May 13, 1937, P. L. 605, sec. 3, 24 PS §610.

2. There is no authority in the School Code, as amended, for the Board of School Directors of the Township of Hopewell, during the current fiscal year, to make any additional appropriations or to increase existing appropriations to the "Instruction Department" or any other "Department" since there are no "unappropriated revenues" or "unexpended balances in existing appropriations" available for such purposes, and no anticipated revenue from any source, on a basis of which temporary loans might be floated to raise revenue for such purpose, even if it could be reasonably concluded that the high cost of living situation describes an "emergency such as epidemics, floods, fire, or other catastrophies".

3. The School Code would be violated by the school board if it were to allow its contract payments to exceed its budget appropriations.

4. The School Code does not permit the appropriation of money in the school budget of one year that should and would be expended in a subsequent year, nor does it permit the present school board of Hopewell

Township to agree upon an increase in teachers' salaries in the current year to be paid out of revenue to be raised in future years. Teachers' salaries for the current fiscal year must be paid out of revenue appropriated in the budget for the current year.

5. Section 511 of the School Code, as last amended by the Act of July 18, 1935, P. L. 1192, 24 PS §481, which provides that "No work shall be hired to be done, no materials purchased, and *no contracts made* by any board of school directors which will cause the sums appropriated to specific purposes in the budget to be exceeded" (italics supplied) is mandatory, and the Hopewell Township board is prohibited by this section from making any contract with the professional employes of the district which would cause the sum appropriated to the specific purposes of the "Instruction Department", to wit, the sum of $90,389.41, to be exceeded, unless done under the provisions of section 563 of the code above referred to.

6. Section 517 of the School Code, as amended (24 PS §482), beginning "Any school director voting for, or any officer approving", etc., provides for a penalty of surcharge against any school director who votes for a contract which would cause a sum appropriated to the specific purpose of the "Instruction Department", or "teachers' salaries" to be exceeded.

7. Section 2613 of the School Code of May 18, 1911, P. L. 309, 24 PS §2213, which provides that "Any school order issued in any other manner or for any other purpose than herein authorized shall, if paid, be disallowed by the auditors, and charged against the person or persons voting for or approving the same", imposes a duty on auditors of school districts of the Commonwealth to surcharge directors who enter into contracts for the payment of money for which no appropriation has been made and for which no authority exists to make a supplemental appropria-

tion except as provided by the second paragraph of section 563 of the code (emergencies) (24 PS §610), and then only strictly under the sanction of that paragraph.

8. The high cost of living is not an "emergency, such as epidemics, floods, fire, or other catastrophies" contemplated by section 563 of the School Code (24 PS §610).

9. It is extremely doubtful whether the court has any authority to enter a declaratory decree, without having a taxpayer made a party to the record.

### Discussion

We do not have before us for decision the question of whether the professional employes of Hopewell Township School District ought to have an increase in salary to meet the high cost of living. If we did have that question to decide, we would unhesitatingly declare that they should have such an increase. They are faced with the same problem that faces all men and women with fixed incomes. Every time an ordinary wage earner gets an increase in wages and that increase is reflected in an increase in the cost of the commodities which we must purchase for our plain daily necessities, it means a cut in the income of all people of fixed income, such as school teachers, white-collar workers, pensioners, annuitants, judges and in general all employes whose incomes are regulated by law. However, we, too, are bound by the law as it is written and not by the law as we would like it to be. If we are to have government by law and not by men, we must interpret the law as the legislature has written it and not as we would wish the legislature had written it.

The real question we must decide is whether, under the facts under consideration, there is any authority in the law for the School District of Hopewell Town-

ship to grant to the professional employes of that district a cost-of-living increase of $200 each for the current fiscal year. We must keep in mind that such an increase would require an additional appropriation, over and above the budget appropriation, of $9,200 for the current fiscal year. Under the facts found above in this opinion, such an increase would cause the Hopewell Township School District budget to be thrown out of balance in the amount of $13,125.85, even if the school district would collect every penny of revenue anticipated from all sources before the end of the current year. Such collection is hardly to be expected.

The budget section of the School Code, being section 563 of the Act of March 18, 1911, P. L. 309, as amended, 24 PS §610, reads as follows:

"The board of school directors of each school district of the second, third, or fourth class shall, annually, at least thirty days prior to the adoption of the annual budget, prepare a proposed budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year. Such proposed budget shall be prepared on a uniform form, prepared and furnished as hereinafter provided, and shall be apportioned to the several classes of expenditures of the district as the board of school directors thereof may determine. Final action shall not be taken on any proposed budget, in which the estimated expenditures exceed two thousand dollars ($2,000), until after ten days' public notice; Provided, however, That nothing in this act shall be construed to prevent any school district, whose total estimated expenditures do not exceed two thousand dollars ($2,000), from holding a public hearing. The proposed budget shall be printed, or otherwise made available for public inspection to all persons who may interest themselves, at least twenty days prior to

the date set for the adoption of the budget. The board of school directors, after making such revisions and changes therein as appear advisable, shall adopt the budget and the necessary appropriation measures required to put it into effect. Within fifteen days after the adoption of the budget the board of school directors shall file a copy of the same in the office of the Department of Public Instruction. In all school districts under the direction of a county superintendent, the county board of school directors shall inspect the annual budget and shall render such advice and assistance regarding the same, as may seem proper, before the said budget shall be signed and forwarded to the department by the county superintendent.

*"The board of school directors may, during any fiscal year, make additional appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophies, the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans. Such temporary loans, when made, shall be approved by a two-thirds vote of the board of school directors.* (Italics supplied.)

"The board of school directors shall have power to authorize the transfer within the same fund of any unencumbered balance, or any portion thereof, from one spending agency to another, but such action shall be taken only during the last nine months of the fiscal year, and, except as hereinbefore otherwise provided, no moneys apportioned to any class of expenditures shall be used for purposes other than designated for said class in said budget. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriations, available for school purposes in that district.

"The uniform budget forms required by this act shall be prepared by the Department of Public Instruc-

tion which shall issue said forms and distribute them annually, as needed, to the school districts."

This is the only provision of the School Code which permits the board of school directors in districts of the fourth class to "make additional appropriations or increase existing appropriations". It will be noted that the authority is conferred only "to meet emergencies, such as epidemics, floods, fire or other catastrophies", and then only if the board provides the funds therefor "from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans".

Inasmuch as the facts in the case under consideration are such and the financial situation in the School District of Hopewell Township is such that the board has no funds available either from (1) unexpended balances in existing appropriations, or (2) unappropriated revenue, or (3) collateral for temporary loans, there is no possible way under existing law to grant the increase, even if we were to conclude that the high cost of living is an emergency "such as epidemics, floods, fire, or other catastrophies".

Every municipality and quasi-municipality such as a school district is a creature of the State and has no other powers than those conferred by the State. No school board has any powers not conferred by the School Code and a board of school directors is circumscribed in its activity by the provisions of the School Code. That same code specifically restricts school directors in their official action and provides penalties for violation of the express mandates of the law relating to the administration of the school system.

Section 511 of the School Code as amended, 24 PS §364, contains the following sentence:

"The use or payment of any public school funds of any school district in this Commonwealth, in any man-

ner or for any purpose not provided in this act, shall be illegal."

Section 516 of the School Code, as amended, 24 PS §482, contains the following:

"Any school director voting for, or any officer approving, a school order for the payment of school funds for any other purpose, or drawn in any other manner, than that provided in this act, shall, together with the surety or sureties on his bond, in addition to the penalty herein provided, be individually liable to the district for the amount thereof."

A study of the foregoing section of the code shows that, in effect, the adoption of a budget in the manner provided by law is a contract with the taxpayers of the school district that the expenditures of the board of school directors for the ensuing fiscal year shall not exceed the amounts set forth in the budget. Any such increase is illegal and void, and any director or official of the school district voting for, approving, or in any way participating in exceeding the budget, is guilty of an illegal act. School district budgets are intended to be religiously followed to the letter, and are not mere rough estimates to be adopted and then forgotten. Any director voting for, or otherwise participating in any payment or contract which causes the amounts appropriated for specific items in the budget to be exceeded, becomes personally liable to the district for the excess, and is also subject to removal from office by the court for disregard of duty.

We therefore conclude that the second question submitted to the court for declaratory judgment must be answered in the negative, and this regardless of our answer to the first question propounded, namely, "Is the present high cost of living an emergency within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610", there being no source from which revenue necessary to grant the increase can be secured by the board without exceeding the budget.

The fault, if any, lies with the former legislatures and not with the board or the court. The board is willing, and so is the court, that an increase be granted, but the legislature has not provided the machinery. The present legislature will, no doubt, correct the situation, but until they act, the present board is powerless, and so is the court, to authorize the increase demanded for the current year.

The School Districts of the Boroughs of Monaca and Midland have made promises of relief to their professional employes for the fiscal year 1947-1948, provided the legislature sets up the machinery therefor, and that is the limit to which the Hopewell Township School Board can go with their professional employes for the current fiscal year 1946-1947.

We then come to the consideration of the first question propounded to the court for declaratory judgment, namely, "Is the present high cost of living an emergency within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610?". The second paragraph of this section of the code is copied and emphasized on page 10 of this opinion.

Having reached the obvious conclusion that the record shows that the Hopewell Township school does not have the funds with which to pay a $200 increase to its professional employes in the current fiscal year, and cannot secure them from any of the sources designated in the second paragraph of section 563 of the School Code, supra, we need not decide whether the present high cost of living is an emergency in the nature of a catastrophe, as provided by said section. However, if it were necessary to pass on that question for the proper determination of the issues involved in the case at bar, we would unhesitatingly follow the reasoning of Judge Sohn in his opinion handed down this day in Ambridge Borough School District, 59 D. & C. 73, and the reasoning of the late Judge Dum-

bauld in the case of Redstone Township School Directors et al. v. Verbanic et al., 44 D. & C. 347. It was decided in both cases that "the present high cost of living is not an emergency within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610. We would be in agreement with this conclusion if it were necessary for us to pass on the question.

It was not unforeseen last spring when the budget of the Hopewell Township School District was adopted, that the salaries of professional employes would not be high. The millage was set at 35 mills, which is at the legal limit. Neither was it unforeseen that the cost of living was rising, and would continue to rise during the fiscal year 1946-1947. The Price Control Act expired June 30, 1946, and there was no assurance whatsoever that price control in any form would be continued. Every financial writer and forecaster, together with many responsible Government officials was forecasting a substantial rise in the cost of living. As a matter of fact the rise which has actually taken place has not been nearly so severe or drastic as many of the Government economic experts at Washington predicted.

The 1943 General Assembly passed the Act of May 28, 1943, P. L. 786, the fifth section of which reads as follows:

"In addition to the increases required by this act, the board of directors (or board of public education) of each school district is hereby authorized to grant temporary or emergency increases in salaries to members of its teaching or supervisory staff for any period up to and including the thirtieth day of June, one thousand nine hundred forty-five, and to discontinue such increases at the end of the period for which the same were granted, any law to the contrary notwithstanding, and any temporary or emergency increases here-

tofore granted by any school district and the discontinuance thereof at the end of the period for which granted, are hereby ratified, confirmed and made valid, notwithstanding the fact that the same may have been done without previous authority of law."

It is significant that the temporary increases authorized by the Act of May 28, 1943, P. L. 786, expired on June 30, 1945. The legislature in 1945 did not see fit to extend this act.

The same Act of May 28, 1943, P. L. 786, increased the salaries of school teachers in the Commonwealth for the fiscal year 1943-1944 and 1944-1945 in amounts ranging from $300 to $100 per year. The same session of the General Assembly, by the Act of May 26, 1943, P. L. 635, appointed a commission of 15 members to study the whole matter of the public school system and to report to the 1945 session. This commission did function and made extensive studies, and a lengthy report was submitted to the General Assembly in 1945, and as a result thereof the Act of May 29, 1945, P. L. 1112, 24 PS §1163.1, was passed, which act increased minimum salaries of teachers in fourth class districts from $900 to $1,400 per year, and provided for minimum increments annually of $100 for a minimum number of seven such increments. This Act of 1945 was passed by the legislature after two years special study, and after consulting with the PSEA. It was intended to be the final answer to the teachers' salary problem.

If the legislature had intended that the high cost of living was to be regarded as an emergency in the nature of catastrophe, such as epidemics, floods, and fires, it could very easily have said so by amending section 563 of the School Code. It did not do so, and we are without power to write into the amendment that which we might wish to be there. The high cost of living is not an emergency in the nature of a

catastrophe as contemplated by the legislature. Even if the School District of Hopewell Township had unexpended balances in appropriations already made, or unappropriated revenue from any source, or capacity to borrow on temporary loans, there is not such emergency of catastrophic nature as to warrant their making additional appropriations or for increasing existing appropriations to pay school teachers more money than the budget calls for, or than their existing contracts call for in the current fiscal year.

The first question for declaratory judgment to be answered by the court is answered in the negative.

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding": Act of June 18, 1923, P. L. 840, §11. It occurs to this court that the taxpayers of Hopewell Township School District have a very decided interest in this controversy. No taxpayer, as such, appears on his own behalf and in behalf of other taxpayers who choose to join with him, nor was any such party made a party to the record. In view of our conclusion on the merits of the case, we deem it unnecessary to decide whether a different conclusion on the merits would be res adjudicata as to the taxpayers.

We therefore make the following

*Decree*

Now, March 24, 1947, the petition of the School District of the Township of Hopewell, Beaver County, Pa., praying for a decree construing the provision of the School Code of the Commonwealth of Pennsylvania with respect to the budget for the fiscal year 1946-1947, having come on for adjudication, after a full hearing, it is determined, in accordance with the foregoing opinion that,

1. The present high cost of living is not an emergency within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610.

2. The Board of School Directors of Hopewell Township, Beaver County, Pa., may not grant to professional employes of said school district an increase in salary on account of the current high cost of living, which increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded.

NOTE.—See also Charleroi Borough School District, 58 D. & C. 126; Robinson Township School District's Petition, 58 D. & C. 217; Upper Moreland Twp. School Dist. v. School Teachers' Assn. of Upper Moreland Twp. et al., 59 D. & C. 267, and Coal Twp. School District v. Coal Twp. Taxpayers Assn., 59 D. & C. 665.